IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**JUST FUNKY, LLC**                                                                                           **PLAINTIFF**

V.                             **CASE NO. 5:22-CV-5037**

**THINK 3FOLD, LLC**                                                                                          **DEFENDANT**

### OPINION AND ORDER DENYING
### MOTION FOR TEMPORARY RESTRAINING ORDER

This is a contract dispute involving Plaintiff Just Funky, an Ohio company, in its role as a creditor and vendor to Defendant Think 3Fold, an Arkansas toy company. Before the Court are Plaintiff's Motion for Temporary Restraining Order (Doc. 14) pursuant to Federal Rule of Civil Procedure 65 and Brief in Support (Doc. 15). The Court ordered expedited briefing on the Motion, and Defendant filed a Response in Opposition (Doc. 17).[1] Plaintiff asks this Court to immediately enjoin Defendant from "from closing a material business transaction with a third party in violation of certain rights of Plaintiff pursuant to a secured promissory note with the Defendant that remains in effect, until such time as information concerning the transaction is provided to Plaintiff and Plaintiff gives consent (or not) in accordance with the note." (Doc. 14, p. 1).

There is complete diversity of citizenship between the party LLCs and their members, s*ee* Doc. 13, ¶ 14, and the amount in controversy exceeds $75,000. The Court therefore has jurisdiction over this case pursuant to 28 U.S.C. § 1332.

---

[1] Although Defendant has received notice of Plaintiff's Motion, the Court treats the Motion as an application for a temporary restraining order ("TRO") under Rule 65(b) rather than a preliminary injunction under Rule 65(a). Plaintiff asks only for a TRO, is seeking immediate relief, and has not requested a hearing for issuance of a preliminary injunction under Rule 65(a).

Plaintiff filed its original Complaint (Doc. 2) on March 2, 2022. The Complaint alleged Plaintiff loaned $944,347 to Defendant pursuant to a secured promissory note ("the Note") and Defendant defaulted on its repayment obligations. The Note also granted Plaintiff a security interest in Defendant's personal property, and Plaintiff alleged it perfected that security interest by filing a UCC-1 with the Arkansas Secretary of State's office. The Complaint brought counts for "Breach of Note" and "Foreclosure on Personal Property Collateral." (Doc. 2, p. 6). In lieu of filing an answer, Defendant filed a Motion to Dismiss (Doc. 10) on May 5. There, Defendant argued that, after the Complaint was filed, it repaid Plaintiff in full, rendering the case moot.

Plaintiff then filed both its Amended Complaint (Doc. 13) and the instant Motion on May 9.[2] The Amended Complaint acknowledges Defendant has repaid the vast majority of the principal and accumulated interest under the Note but alleges at least $100,000 of principal, mandatory attorneys' fees, and interest remain outstanding. The Amended Complaint further alleges Defendant misrepresented its business to induce Plaintiff's loan, Defendant breached Plaintiff's management rights under the Note by pursuing an asset sale without Plaintiff's consent, and Defendant breached separate agreements to purchase products from Plaintiff. The Amended Complaint adds counts for "Fraudulent Inducement," "Breach of the Agreement to Purchase Product," and declaratory judgment. (Doc. 13, pp. 13–16).

The instant Motion asks the Court to enjoin Defendant from pursuing an asset sale without Plaintiff's consent and order Defendant to give Plaintiff all documents related to

---

[2] Defendant's original Motion to Dismiss was mooted by Plaintiff filing an amended complaint. *See* Doc. 18. Defendant has now filed a renewed Motion to Dismiss (Doc. 19).

2

the challenged asset sale. Plaintiff contends the asset sale "is imminently about to close" and "is purported to be for substantially all of the assets of Think 3 Fold, which is highly likely to be insolvent on a balance sheet basis." (Doc. 15, p. 1).

District courts have broad discretion when deciding whether to grant a request for a TRO. *Powell v. Noble*, 36 F. Supp. 3d 818, 829 (S.D. Iowa 2014). To guide that discretion, the Court must consider: (1) the likelihood that the movant will succeed on the merits; (2) whether the movant will suffer irreparable harm if injunctive relief is not granted; (3) the probability that granting relief will cause substantial harm to others; and (4) whether the injunction advances the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.* 640 F.2d 109, 114 (8th Cir. 1981). The movant has the burden of establishing the necessity of a TRO. *Baker Elec. Co-op, Inc. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir. 1994).

First, Plaintiff has failed to show it is likely to succeed on the merits. The instant Motion relates to Defendant's alleged breach of Plaintiff's management rights under the Note. Those rights appear in Section 9 of the Note. That section provides, in pertinent part:

> **9. Management Rights**. Notwithstanding anything herein to the contrary, for so long as this Note is outstanding . . . the Company shall not, and shall not enter into any commitment to, and the Managers shall not authorize the Company to, do any of the following (the "**Management Rights**"), with respect to itself or any subsidiary of the Company (each, a "**Company Entity**"), without the approval the Holder: . . .
>
> (b) make any material change to the nature of the business conducted by the [sic] or any Company Entity or enter into any business other than the business of such Company Entity as of the date hereof[.]

(Doc. 13-1, p. 8 (emphasis in original)). Plaintiff argues Section 9(b) of the Note gives it the right—until Defendant fully satisfies its debt under the Note—to approve or disapprove

3

Defendant's sale of its assets to a third party. Defendant maintains that (1) it has already fully satisfied its debt and therefore Section 9(b) is no longer applicable, and (2) even if Section 9(b) were applicable, it does not give Plaintiff any right to approve or disapprove an asset sale. Rather, Section 9(b) only pertains to Defendant taking any action to alter the type of business it is in, something Defendant attests the challenged asset sale will not do. *See* Doc. 17-1, ¶ 9.

The Court, at this preliminary stage, finds Defendant's reading of Section 9(b) more persuasive than Plaintiff's. Section 9(b) only gives Plaintiff management rights over "material change[s] to the nature of [Defendant's] business."[3] While Plaintiff alleges the challenged asset sale will likely render Defendant "insolvent on a balance sheet basis," (Doc. 15, p. 1), Plaintiff does not allege the asset sale will result in Defendant moving away from the toy business. Instead, Plaintiff conclusorily argues that it is likely to succeed on the merits because it "has Management Rights (including the right to consent to the Material Proposed Transaction), and Defendant is actively blocking Plaintiff from exercising such rights." (Doc. 15, pp. 7–8). Plaintiff has not met its burden to show Defendant would breach the Note by undertaking an asset sale without Plaintiff's approval.

---

[3] The plain meaning of the phrase "nature of the business conducted" in Section 9(b) of the Note is that it refers to the *type* of business Defendant is engaged in, not its asset holdings or any sale thereof. This reading is consistent with how courts use similar phrasing. *See, e.g.*, *Outsource Int'l, Inc. v. Barton*, 192 F.3d 662, 667 (7th Cir. 1999) ("In the present case, the district court considered the nature of OSI's business (the industrial staffing industry) . . . ."); *Woodson-Tenent Lab'ys, Inc. v. United States*, 454 F.2d 637, 639 (6th Cir. 1972) ("The general nature of the business is the operation of analytical laboratories."); *Hayden v. Bowen*, 404 F.2d 682, 684 (5th Cir. 1968) ("The essential nature of Hayden's business was the transportation of airline passengers to and from the Houston International Airport.").

Second, Plaintiff has not shown it will suffer irreparable harm absent immediate injunctive relief. "In order to demonstrate irreparable harm, a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Arnzen v. Palmer*, 713 F.3d 369, 374 (8th Cir. 2013) (quoting *Iowa Utilities Bd. v. F.C.C.*, 109 F.3d 418, 425 (8th Cir.1996)). "Economic loss, on its own, is not an irreparable injury so long as the losses can be recovered." *DISH Network Serv. L.L.C. v. Laducer*, 725 F.3d 877, 882 (8th Cir. 2013).

Plaintiff argues it will suffer irreparable harm in part because "if the Proposed Material Transaction closes without Plaintiff having given consent, Plaintiff's Management Rights under Section 9(b) of the Note will have been lost forever." (Doc. 15, p. 8). But Plaintiff has provided no evidence the asset sale is imminent. Meanwhile, Defendant has provided an affidavit from one of its members attesting that, while there are ongoing talks with a third party, Defendant has "no sense of an imminent deal." (Doc. 17-1, ¶ 8). While the evidence suggests an asset sale by Defendant is possible, "the mere possibility" of harm is insufficient for injunctive relief. *Sessler v. City of Davenport, Iowa*, 990 F.3d 1150, 1156 (8th Cir. 2021). So, even assuming the challenged asset sale would breach Plaintiff's management rights under the Note and that breach could not be remedied with damages, Plaintiff has not met its burden to show that alleged breach is imminent.

The Court need not reach the third and fourth factors in the TRO analysis because, assuming without deciding that those factors favor a TRO, they would nevertheless be outweighed by the unlikelihood of success on the merits and lack of imminent, irreparable injury to Plaintiff.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Temporary Restraining Order (Doc. 14) is **DENIED**.

**IT IS SO ORDERED** this 26th day of May, 2022.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE