IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**JUST FUNKY, LLC**                                                                                           **PLAINTIFF**

V.                                            **CASE NO: 5:22-CV-05037**

**THINK 3 FOLD, LLC**                                                                                        **DEFENDANT**

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the Court are Defendant Think 3 Fold's Partial Motion to Dismiss Amended Complaint and Brief in Support (Docs. 19 & 20), Plaintiff Just Funky's Response in Opposition (Doc. 27), and Defendant's Reply (Doc. 28); Defendant's Motion for Sanctions and Brief in Support (Docs. 43 & 44) and Plaintiff's Response in Opposition (Doc. 47); and Plaintiff's Motion for Leave to File Second Amended Complaint (Doc. 46) and Defendant's Response in Opposition (Doc. 47).

The Court finds that the bulk of the parties' disputes are moot for Article III purposes and Defendant's Partial Motion to Dismiss (Doc. 19) is therefore **GRANTED**. In addition, Defendant's Motion for Sanctions (Doc. 43) is **DENIED**, and Plaintiff's Motion for Leave to File Second Amended Complaint (Doc. 46) is **DENIED**.

The Court also ordered the parties to show cause as to why this case should not be transferred to the Northern District of Ohio. Having considered the parties' responses (Docs. 63 & 64), the Court will not transfer this case.

## I.  BACKGROUND

This is a contract dispute involving Plaintiff, an Ohio company, in its role as a creditor and vendor to Defendant, an Arkansas toy company. Plaintiff loaned Defendant approximately $1 million in late 2021, and Defendant allegedly defaulted on the loan. The

1

parties ostensibly settled their dispute in April 2022, but Plaintiff claims Defendant materially breached the settlement agreement by making its settlement payments several days late. Plaintiff kept the settlement payments but filed the First Amended Complaint (Doc. 13) reasserting its original claims and adding additional claims. Since then, this case has only become more contentious.

The parties started doing business together in 2020. In late 2021, after the parties had established a productive relationship, Defendant "expressed an interest in receiving a loan from Plaintiff." (Doc. 13, ¶ 18). After Plaintiff conducted due diligence—and Defendant allegedly misrepresented its financial position—Plaintiff agreed to issue a line of credit to Defendant.

In late December 2021, the parties executed a secured convertible promissory note ("the Note") (Doc. 13-1). Defendant borrowed $944,347 from Plaintiff under the Note, which required Defendant to make weekly payments on the Note balance beginning in January 2022. The Note also required Defendant to pay Plaintiff a monthly consulting fee of $45,000 until the loan was repaid. To secure the loan, Defendant granted Plaintiff a security interest in its assets and Defendant's three members executed a separate agreement in their personal capacities to guarantee repayment of the loan. Other provisions of the Note granted Plaintiff an option to purchase 25 percent equity in Defendant and certain management rights over Defendant for as long as the Note was outstanding.

In the weeks leading up to the Note's execution, Defendant also allegedly placed four orders with Plaintiff for plush toys. The orders were to be delivered in April, May, June, and July of 2022.

Beginning in January 2022, Defendant allegedly failed to make the required payments on the Note balance and failed to pay the consulting fee. In early February, Plaintiff notified Defendant it was in default on the loan. Defendant made one payment of $25,000 on February 4, which Plaintiff applied to the interest owed on the Note balance.

On February 24, 2022, Plaintiff sued Defendant's three members personally—to enforce their guaranty of the Note—in the United State District Court for the Northern District of Ohio, Case Number 1:22-cv-00314.

One week later, Plaintiff separately sued Defendant in this Court. Plaintiff's original Complaint (Doc. 2) sought damages for the unpaid Note balance and to foreclose on Defendant's personal property.

The parties began settlement negotiations and reached an agreement in mid-April 2022. The Settlement Agreement (Doc. 11-1) required that Defendant pay all outstanding principal and accumulated interest on the Note in the amount of $1,264,774.84 ("the Settlement Amount"), no later than April 18. In exchange, Plaintiff agreed to dismiss both of its pending lawsuits "within 10 (ten) business days of payment of the Settlement Amount" or else "be obligated to refund the Settlement Amount." (Doc. 11-1, p. 4). The Agreement also provided that

- upon payment of the Settlement Amount, Plaintiff promised to release Defendant "from any and all liabilities, obligations, actions, suits, judgments, claims, causes of action, demands, and damages (including any claims for interest, fees and/or attorneys' fees), known or unknown, . . . including all claims related to the Note (except as otherwise set forth herein) and this Settlement Agreement";

3

- the Agreement "contains the entire understanding and agreement between and among the Parties hereto with respect to the matters referred to herein. No other . . . prior or contemporaneous agreements, oral or written, respecting such matters, which are not specifically incorporated herein, will be deemed in any way to exist or bind any of the Parties hereto"; and

- "any failure by the Think 3 Fold Parties to make timely payment of the Settlement Amount to Just Funky shall constitute a material breach of this Settlement Agreement," would render Plaintiff's releases "null and void *ab initio*," and would make the Settlement Amount due immediately, with interest.

*Id.* at pp. 2, 5.

The parties signed the Settlement Agreement on April 13, and Defendant paid the Settlement Amount. Unfortunately, Defendant's payments were a few days late and, rather than ending, this litigation become more complicated.

Defendant made the following payments:

- 4/20/22: $450,000.00
- 4/21/22: $120,000.00
- 4/28/22: $694,774.84

(Doc. 11-2). These payments total $1,264,774.84, equal to the Settlement Amount. To account for interest that accumulated due to its untimeliness, Defendant made an additional payment of $4,578.41 on May 4. Plaintiff accepted Defendant's money but refused to dismiss its lawsuits.

At some point after the parties executed the Settlement Agreement, Plaintiff initiated a third lawsuit against Defendant in the Circuit Court of Cook County, Illinois, to

obtain a judgment against Defendant under the Settlement Agreement. According to Plaintiff, "the Cook County Circuit Court expressed trepidation about entering a judgment" because Defendant had already paid the Settlement Amount. Plaintiff has since dismissed that suit. *See* Doc. 47, p. 6.

On May 5, Defendant filed a motion to dismiss (Doc. 10), arguing Plaintiff's claims were moot following Defendant's repayment of the Note. That motion spurred Plaintiff to file the First Amended Complaint—the current operative complaint—on May 9, mooting Defendant's first motion to dismiss.

The First Amended Complaint acknowledges Defendant's repayment but alleges at least $100,000 of principal, mandatory attorneys' fees, and interest remain outstanding under the Note. The First Amended Complaint also adds new allegations: that Defendant misrepresented its financial position to induce Plaintiff's loan, Defendant breached Plaintiff's management rights under the Note by pursuing an asset sale without Plaintiff's consent, and Defendant breached its separate contracts to purchase plush toys from Plaintiff.[1] Plaintiff also seeks a declaratory judgment stating that the plush agreements are valid contracts and Defendant cannot sell its assets without Plaintiff's consent. Conspicuously, the First Amended Complaint contains no mention of the Settlement Agreement.

On May 22, Defendant filed its Partial Motion to Dismiss Amended Complaint. *See* Doc. 19. Defendant argues Plaintiff's fraudulent inducement claim should be dismissed

---

[1] On the same day it filed the First Amended Complaint, Plaintiff also moved for a temporary restraining order to prevent Defendant from selling its assets to a third party. *See* Doc. 14. The Court denied that motion. *See* Doc. 23. According to the parties' more recent filings, that asset sale was completed in July 2022.

5

for failure to plead with particularity and the claims that involve the now-paid Note must be dismissed as moot. Defendant's motion does not challenge Counts IV or V, which are for breach of the plush sale agreements and declaratory judgment, respectively.

On July 5, the Court held a hearing and heard argument on the Partial Motion to Dismiss. The Court ordered the parties to participate in an early settlement conference with the Honorable Christy Comstock, United States Magistrate Judge. Should the matter fail to settle, the Court ordered the parties to obtain local counsel and show cause as to why this case should not be transferred to the Northern District of Ohio due to Plaintiff's first-filed case pending in that district. *See* Doc. 45.

On August 3, Defendant filed its Motion for Sanctions. *See* Doc. 43. Defendant argues Plaintiff violated Federal Rule of Civil Procedure 11 when it filed the First Amended Complaint after receiving and accepting full payment from Defendant. Defendant further argues Plaintiff has needlessly multiplied these proceedings by filing three lawsuits in three jurisdictions.

On August 17, Plaintiff filed its Motion for Leave to File Second Amended Complaint. *See* Doc. 46. The proposed Second Amended Complaint would remove the claim for foreclosure on Defendant's assets and add a claim for breach of the Settlement Agreement. It would also replace the claim for breach of the Note with more specific claims for breach of Plaintiff's management rights under the Note and to enforce Plaintiff's option under the Note to purchase 25 percent equity in Defendant. The three complaints include the following counts:

|  | **Original Complaint (Doc. 2)** | **First Amended Complaint (Doc. 13)** | **Proposed Second Amended Complaint (Doc. 46-1)** |
|---|---|---|---|
| **Count I** | Breach of Note | Fraudulent Inducement | Fraudulent Inducement |
| **Count II** | Foreclosure of Personal Property Collateral | Breach of Note | Breach of Settlement Agreement |
| **Count III** |  | Foreclosure of Personal Property Collateral | Breach of Section 9 of Note |
| **Count IV** |  | Breach of the Agreement to Purchase Product | Specific Performance Concerning Option |
| **Count V** |  | Declaratory Judgment | Breach of Section 2(d) of the Note |
| **Count VI** |  |  | Breach of the Agreement to Purchase Product |
| **Count VII** |  |  | Declaratory Judgment |

On August 25, the parties participated in a settlement conference with Judge Comstock. The case did not settle. Pursuant to the Court's order, the parties obtained local counsel and filed their show-cause responses. Plaintiff asserts it filed this case in Arkansas because it doubted whether Defendant would be subject to personal jurisdiction in Ohio (unlike its individual members, the Defendant LLC did not consent to jurisdiction in Ohio). Defendant does not explicitly argue it is not subject to personal jurisdiction in Ohio but nevertheless urges the Court to not transfer this case because the proceedings in this Court are further along than the Ohio proceedings.

## II.  DISCUSSION

### A.  First-to-File Rule

Where there is parallel litigation involving the same or similar parties and issues, "courts follow a 'first to file' rule . . . where . . . the first court in which jurisdiction attaches

7

has priority to consider the case." *Orthmann v. Apple River Campground, Inc.*, 765 F.2d 119, 121 (8th Cir. 1985). While ultimately within the discretion of the district court, the rule should be applied unless there are "compelling circumstances" counseling otherwise. *U.S. Fire Ins. Co. v. Goodyear Tire & Rubber Co.*, 920 F.2d 487, 488 (8th Cir. 1990) (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11th Cir.1982)).

Plaintiff's filing of multiple lawsuits—and the inconsistent forum selection clauses that facilitated those duplicative suits—was inefficient and a drain on judicial resources. Nevertheless, the Court has become familiar with the history and facts of this case. More extensive motion practice has occurred in this venue than in the Ohio action, and Plaintiff's claims regarding fraudulent inducement and breach of the plush toy contracts are not present in the Ohio action. Moreover, the Ohio action, while closely related to this case, ultimately involves a contract between Plaintiff and Defendant's members that is not at issue here. Given these differences and the open question of whether Defendant is subject to personal jurisdiction in Ohio, the Court declines to transfer this case at this time.

### B.  Defendant's Partial Motion to Dismiss and Plaintiff's Motion for Leave to File Second Amended Complaint

Defendant contends Counts II and III of the First Amended Complaint are moot—and the Court therefore lacks jurisdiction over them—because Defendant "has now paid off the entire Note balance *and* the additional categories of damages that Plaintiff seeks associated with this alleged default." (Doc. 20, p. 2) (emphasis in original). Defendant further contends that Plaintiff's new Note-related claims in the proposed Second Amended Complaint would be futile under the terms of the Settlement Agreement.

"A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (cleaned up). Generally, settlement of a dispute renders a claim moot for Article III purposes. *See Pressley Ridge Sch. v. Shimer*, 134 F.3d 1218, 1221 (4th Cir. 1998).

Defendant brings a factual jurisdictional challenge to Plaintiff's claims. A factual attack "challenges the veracity of the facts underpinning subject matter jurisdiction." *Davis v. Anthony, Inc.*, 886 F.3d 674, 679 (8th Cir. 2018) (quoting *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009)). "In a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards." *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (internal citation omitted). "Trial courts have wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Davis v. Anthony, Inc.*, 886 F.3d 674, 677 (8th Cir. 2018) (quoting *Johnson v. United States*, 534 F.3d 958, 964 (8th Cir. 2008)). Here, Defendant has attached the Settlement Agreement (Doc. 11-1) and proof of payments (Doc. 11-2) to its Motion. The Court has also considered the other documents attached to the parties' pleadings and briefing.

According to the Settlement Agreement, Defendant's payment of the Settlement Amount would result "in full and final satisfaction of Think 3 Fold's obligations under the Note." (Doc. 11-1, p. 2). It is undisputed that Defendant paid the Settlement Amount. It is also undisputed that Defendant's payments were late.

The Settlement Agreement states that untimely payment of the Settlement Amount is a material breach of the Agreement. The consequences for such a breach are that Plaintiff's releases "will be deemed null and void," "the balance due under the Settlement Agreement shall immediately accelerate and become due" with interest and other continuing fees, and proceedings may be initiated in Chicago, Illinois, to enforce the Settlement Agreement.[2] (Doc. 11-1, p. 3).

Plaintiff's position is that Defendant's untimely payment breached the Settlement Agreement, Plaintiff's releases are now void, its rights under the Note remain in effect, and it may keep the Settlement Amount. Plaintiff also contends Defendant's May 4 interest payment did not fully account for the interest and fees that had accrued due to Defendant's untimely payment of the Settlement Amount. While initially arguing that Defendant still owed amounts under the Note, Plaintiff now concedes that the amounts it claims are outstanding are due under the Settlement Agreement only. *See* Doc. 46, p. 1 ("Plaintiff seeks to enforce the fees, costs, and other obligations owed by Defendant under the breached Settlement Agreement only."). Nevertheless, the proposed Second Amended Complaint seeks to enforce both the Settlement Agreement and Plaintiff's purchase option and management rights under the Note.

To decide whether Plaintiff's claims are moot, the Court must determine whether the parties' rights and obligations under the Note survived the Settlement Agreement. The Settlement Agreement is governed by Illinois law. "A settlement agreement is in the

---

[2] The Settlement Agreement states that *Defendant* may initiate proceedings to enforce the Agreement in the event of Defendant's late payment. The Court presumes this is a scrivener's error and the provision should instead state that *Plaintiff* may initiate such proceedings. The error is not material to the question before the Court.

nature of a contract, and construction and enforcement of such agreements are governed by principles of contract law." *Solar v. Weinberg*, 653 N.E.2d 1365, 1368 (Ill. App. Ct. 1995).

The decision of the Appellate Court of Illinois in *Mederacke v. Becker*, 263 N.E.2d 257 (Ill. App. Ct. 1970), is instructive. There, the trial court entered judgment against the defendant. After the plaintiff discovered the defendant had insufficient assets to pay the entire judgment, the parties executed a settlement agreement. The defendant agreed to pay about half of the judgment amount and pay the plaintiff's attorney fees in two separate installments, with the payment due dates specified in the agreement. In exchange, the plaintiff would enter a partial satisfaction of judgment with the trial court and voluntarily dismiss certain other lawsuits it had filed against the defendant. The agreement stated that time was of the essence.

The defendant paid the partial judgment amount and plaintiff's attorney fees. However, one of the attorney-fees payments was late. Because the agreement made time of the essence, the plaintiff petitioned the trial court to reinstate the original, full judgment against the defendant. "The trial court refused, observing that this litigation, like all litigation, had to end sometime and someplace and that the performance in full of the settlement agreement was now complete and the case would be considered to be concluded." *Id.* at 258.

The Appellate Court of Illinois affirmed the trial court. It reasoned:

> Here the parties sought to compromise and settle various and sundry diverse claims, a course of conduct that i[s] generally to be encouraged and here to be applauded. There was full compliance with the agreement save for the date of one payment of costs. To now undo that which has been done and reinstate in full the original judgment would be lacking in equity and unwise. It would reopen wounds and animosities that have taken more

11

than twenty-two years to cure. A court has inherent power to protect itself and litigants against harassing and vexatious litigation. It not only has the power but it has the duty to do so. There is no suggestion here that the settlement agreement was other than fair or equitable under the facts and circumstances. There is no suggestion that the tardiness demonstrated by the record was in any way prejudicial to the real interests of any of the parties. The action of the trial court was not an abuse of discretion but on the contrary was an exercise of sound discretion, and that action is affirmed.

*Id.* at 258–59 (citation omitted).

The facts of the present case dictate the same result. Plaintiff and Defendant managed to settle a contentious dispute that had, at that point, spawned two lawsuits and presumably generated significant legal fees for both parties. The compromise in the Settlement Agreement appears fair and equitable, and Plaintiff does not contend it suffered any real prejudice by receiving the Settlement Amount a few days late. Neither party has sought recission of the Settlement Agreement, which would return them to their "status before the agreement was reached." *Swiatek v. Azran*, 834 N.E.2d 602, 604 (Ill. App. Ct. 2005) (citing *Solar*, 653 N.E.2d at 1368). Instead, both parties want the benefit of their bargain. Plaintiff wants to keep the Settlement Amount, and Defendant wants to be free from its obligations under the Note. With the Settlement Amount paid—minor disagreements about the interest owed on that amount aside—the parties' dispute over the Note has been resolved.

Still, one fact distinguishes this case from *Mederacke*. Here, the Settlement Agreement is more explicit than the agreement in *Mederacke*—it states untimely payment is a material breach that voids Plaintiff's releases. However, this distinction is ultimately immaterial because enforcing this untimely-payment provision while at the same time allowing Plaintiff to keep the Settlement Amount would result in an inequitable forfeiture of Defendant's rights under the Settlement Agreement.

A forfeiture is the "denial of compensation that results when the obligee loses his right to the agreed exchange after he has relied substantially, as by preparation or performance on the expectation of that exchange." *Sahadi v. Cont'l Ill. Nat. Bank & Tr. Co. of Chi.*, 706 F.2d 193, 199 (7th Cir. 1983) (quoting Restatement (Second) of Contracts § 229 cmt. b (Am. Law Inst. 1979)). "Forfeitures are not favored in equity, and agreements making time the essence of a contract will not impel a court of equity to recognize a forfeiture where to do so would result in giving one party an unfair advantage over the other." *O'Malley v. Cummings*, 229 N.E.2d 878, 881 (Ill. App. Ct. 1967). Contracted-for forfeitures may be enforceable when the contractual language is unambiguous and the forfeiture is properly declared, but the breaching party will nevertheless "be protected against forfeiture to prevent wrong or injustice." *Miles Homes, Inc. v. Mintjal*, 307 N.E.2d 724, 727 (Ill. App. Ct. 1974). "This is especially true where the agreement is simply one for the payment of money." *Id.* Courts are similarly reluctant to enforce a forfeiture provision where, as here, "both parties yet stand to benefit from their original bargain under the Agreement." *City of Chi. v. Chi. Title & Tr. Co.*, 563 N.E.2d 65, 72 (1990).

The Court declines to recognize a forfeiture of Defendant's rights under the Agreement and finds it would be grossly inequitable for Plaintiff to retain the Settlement Amount while its rights under the Note continue to be enforceable—seemingly in perpetuity—against Defendant. Accordingly, the Court, exercising its inherent power under Illinois law as described in *Mederacke*, finds that the parties' then-existing disputes were fully resolved by the Settlement Agreement, including Plaintiff's claims related to its ability to exercise an option or management rights under the Note. Plaintiff's release of

claims also encompasses Plaintiff's fraudulent inducement claim as pled in Count I of the First Amended Complaint, the facts of which pre-date the Settlement Agreement.[3]

Having found that the parties' obligations under the Note did not survive the Settlement Agreement, the Court's mootness inquiry is straightforward. For Article III purposes, the Settlement Agreement extinguished all disputes between the parties that existed at the time the Agreement was signed. *See Corsair Special Situations Fund, L.P. v. Engineered Framing Sys., Inc.*, 2009 WL 10682046, at *3 (D. Md. Apr. 16, 2009) (finding "[t]here was no longer a case or controversy" because the parties executed a settlement agreement, despite the plaintiff arguing the defendant had breached the settlement agreement by failing to timely satisfy certain terms of the agreement). To the extent an actual controversy remains, that controversy involves the Settlement Agreement only. Plaintiff's claims that pre-date the Settlement Agreement—including all claims seeking to enforce certain provisions of the Note—are moot, and the Court lacks jurisdiction to decide those claims.

Accordingly, Counts I, II, III, and V—to the extent it seeks a declaratory judgment related to Plaintiff's rights under the Note—of the First Amended Complaint are dismissed with prejudice. The parties have not briefed whether Plaintiff's releases under the Settlement Agreement affect Count IV of the First Amended Complaint, which alleges that Defendant breached certain purchase agreements for plush toys. The Court will

---

[3] Defendant challenges Plaintiff's fraudulent inducement claim for failure to plead with particularity under Federal Rule of Civil Procedure 9(b), rather than Article III mootness. Nevertheless, because mootness is jurisdictional, the Court has an independent obligation to address it *sua sponte*. *See In re Steward*, 828 F.3d 672, 684 (8th Cir. 2016). Because the Court finds Plaintiff's fraudulent inducement claim is moot, it need not address Defendant's Rule 9(b) argument.

therefore not address Count IV of the First Amended Complaint (Count VI of the proposed Second Amended Complaint) at this time.

Should Plaintiff wish to continue this case rather than putting these events behind it, it may file a renewed motion for leave to file a second amended complaint that comports with the Court's rulings herein **no later than December 8, 2022**.

To the extent Plaintiff quibbles with the amount of interest and fees Defendant owes under the Settlement Agreement because of its untimely payment, Plaintiff may also seek to enforce those provisions of the Settlement Agreement. The Court notes, however, that the Agreement specifies it may only be enforced in a federal or state court in Chicago, Illinois,[4] and there is no indication that Defendant has waived this provision of the Agreement.

### C. Defendant's Motion for Sanctions

Defendant seeks sanctions against Plaintiff under Federal Rule of Civil Procedure 11 because Plaintiff filed its First Amended Complaint after Defendant paid the Settlement Amount.

Under Rule 11, when an attorney signs and presents a pleading to the Court, the attorney certifies, in relevant part, that the pleading is not being presented for any

---

[4] The Settlement Agreement states that Defendant "hereby submit[s] to the *exclusive* jurisdiction of the federal and state courts having their situs in Chicago, Illinois in any suit or proceeding arising out of related to this Settlement Agreement or the transactions contemplated hereby." (Doc. 11-1, p. 6) (emphasis added). "[A] party's submitting to the 'exclusive' jurisdiction of a forum means it agrees that the specified jurisdiction is the only proper venue for a dispute." *Piechur v. Redbox Automated Retail, LLC*, 2010 WL 706047, at *3 (S.D. Ill. Feb. 24, 2010); s*ee also Fluidtech, Inc. v. Gemu Valves, Inc.*, 457 F. Supp. 2d 762, 765 (E.D. Mich. 2006) (granting motion to transfer venue to a court in Georgia where agreement stated that the "buyer . . . hereby submits to the exclusive jurisdiction of any state or federal court located in Fulton County, Georgia").

improper purpose—such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation—and the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or establishing new law. "[T]he standard under Rule 11 is whether the attorney's conduct, 'viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court.'" *Clark v. United Parcel Serv., Inc.*, 460 F.3d 1004, 1010 (8th Cir. 2006) (quoting *Perkins v. Spivey*, 911 F.2d 22, 36 (8th Cir. 1990)).

Defendant contends that Plaintiff's First Amended Complaint was filed for an improper purpose. Defendant cites Plaintiff filing three separate lawsuits and Plaintiff counsel's statement at the July 5 hearing that "bad blood" between the parties was preventing amicable resolution of this lawsuit. Defendant further argues that Plaintiff had no legal basis to bring claims based on the Note after Defendant had paid the Settlement Amount. Finally, Defendant argues Plaintiff violated 28 U.S.C. § 1927—which allows sanctions against a party "who so multiplies the proceedings in any case unreasonably and vexatiously"—by bringing three lawsuits against Defendant and its members.

At the July 5 hearing, the Court expressed its concerns about Plaintiff filing an amended complaint after accepting Defendant's settlement funds. Those concerns stand. However, at this point, the Court does not find Plaintiff's actions rise to the level of sanctionable behavior. Moreover, Plaintiff is not solely to blame for complicating these proceedings. Defendant agreed to terms in the Settlement Agreement that required prompt payment, on threat of breach, and failed to meet the deadline. And the parties share blame for their contracts' inconsistent forum selection clauses. The Motion is denied.

## III. CONCLUSION

For these reasons, Defendant's Partial Motion to Dismiss (Doc. 19) is **GRANTED** and Counts I, II, III, and V—to the extent it seeks a declaratory judgment related to Plaintiff's rights under the Note—of the First Amended Complaint are **DISMISSED WITH PREJUDICE**; Defendant's Motion for Sanctions (Doc. 43) is **DENIED**; and Plaintiff's Motion for Leave to File Second Amended Complaint (Doc. 46) is **DENIED**.

**IT IS SO ORDERED** on this 28th day of November, 2022.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE